**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

CHARLES MONTOYA,

     Plaintiff,

vs.                                                                No. 13-cv-0030-JCH/GBW

JANET NAPOLITANO, SECRETARY,
U.S. DEPARTMENT OF HOMELAND
SECURITY,

     Defendant.

## MEMORANDUM OPINION AND ORDER

On June 13, 2014, Defendant Janet Napolitano filed a Motion to Dismiss or in the Alternative Motion for Summary Judgment (ECF No. 36) and a Corrected Motion to Dismiss or in the Alternative Motion for Summary Judgment (ECF No. 37). The Motion to Dismiss is moot and will be dismissed in light of the filing of the Corrected Motion to Dismiss. Having reviewed the corrected motion, the pleadings, the evidence, the relevant law, and otherwise being fully advised, the Court concludes that the corrected motion to dismiss should be granted as to the claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2 and 2000e-3(a); Title I of the Civil Rights Act of 1990, 42 U.S.C. § 1981; and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, for failure to exhaust and state a claim, but should be denied as to Plaintiff's claim under the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, because there are material issues of fact that preclude summary judgment on Plaintiff's failure-to-accommodate theory of liability.

## I.        FACTUAL BACKGROUND

On or around 1997 or 1998, Plaintiff was diagnosed with Pigmentary Glaucoma, an incurable ocular disease that causes a loss of peripheral vision in both eyes and seeing halos around lights at night. *See* Pl.'s Aff., ECF No. 50 at 2 of 8. The condition makes it difficult for Plaintiff to walk, see people beside him, and drive. *Id.* at 2-3 of 8. He must look down in order to avoid tripping and injury and he cannot play sports.  *Id.* at 3 of 8.  Plaintiff's physician has restricted him to driving within 20 miles from home and to avoid heavy traffic and night driving. *See id.*; Pl.'s Dep. 16:14-17:11, ECF No. 36-2.

From 1999 until 2012, Plaintiff has been employed by the Department of Homeland Security (the "Agency") in El Paso, Texas, as a Law Enforcement Communication Assistant ("LECA") and Sector Enforcement Specialist ("SES"), both of which involved the same duties. Pl.'s Dep. 10:5-11:25, ECF No. 36-2; Pl.'s Aff., ECF No. 50 at 2 of 8.   He handled communications for the entire El Paso sector, helping agents determine if detainees were legally in the country and/or wanted through local, state, or federal warrants or through International Law Enforcement. Pl.'s Aff., ECF No. 50 at 2 of 8.   He supported regional enforcement personnel via integrated communication systems, which utilize radio, telephone, teletype and facsimile equipment. *See* Pl.'s Ex. 30, ECF No. 49-7 at 14 of 33. He monitored agents performing sensory response, line operations, and cameras, and he conducted radio, vehicle registration, and immigration checks that were coming from Border Patrol agents on the border in the El Paso area.  *See* Pl.'s Ex. 35, ECF No. 49-8 at 24-25 of 47. Plaintiff would look at the monitors and respond to agents on the radio. *See id.* He rotated between three locations:  the El Paso Del Norte Bridge, a location with cameras but no checkpoints; the Isleta/Zaragosa Bridge, a location with one checkpoint and cameras; and the El Paso Sector, a location with no cameras.

2

Pl.'s Ex. 30, ECF No. 49-7 at 14 of 33.  His driving commute to El Paso was approximately 60 miles from his home in Las Cruces, New Mexico.  *See id.* at 15 of 33.

On March 9, 2011, Plaintiff sent a Request for Modified Duty to Scott A. Luck, the Chief Patrol Agent ("CPA") for the El Paso Sector.  Pl.'s Ex. 2, ECF No. 49-2 at 22 of 28.  He noted his severe pigmentary glaucoma in both eyes made it difficult to drive to work in direct sunlight eastbound in the morning and in heavy traffic, and he requested to work at the PDT Camera Room until the sun is at a point in the sky that it does not impede his vision.  *See id*.  The Agency granted his request with the caveat that he needed to submit documentation from his physician to the Agency for an extension of modified duty on April 12, 2011, as well as updated medical documents.  Pl.'s Ex. 3, ECF No. 49-2 at 24 of 28.  Plaintiff timely submitted the requested documentation, and the Agency again approved his extension of modified duty.  Pl.'s Ex. 4, ECF No. 49-2 at 26 of 28; Pl.'s Ex. 5, ECF No. 49-2 at 28 of 28.  On July 29, 2011, Javier Tarin, Assistant Chief Patrol Agent, notified Plaintiff by letter that he needed to submit additional documentation from his physician about his medical condition and recommendations for specific accommodation.  Pl.'s Ex. 7, ECF No. 49-3 at 5-6 of 14.

On August 2, 2011, Plaintiff submitted a written memorandum, along with medical documentation, requesting as a reasonable accommodation a change in duty location to the Las Cruces, New Mexico, Station.  Pl.'s Ex. 8, ECF No. 49-3 at 8-9 of 14. On August 16, 2011, he submitted a Request for Reasonable Accommodation form to the Agency, requesting reassignment to the Las Cruces station.  Pl.'s Ex. 9, ECF No. 49-3 at 11 of 14.  On August 30, 2011, the Agency denied his request, stating there were currently no openings at the Las Cruces Station.  Pl.'s Ex. 10, ECF No. 49-3 at 13 of 14.

The LECA positions are at the Sector and the El Paso Del Norte Bridge in the El Paso area and at the Deming, New Mexico Station.  *See* Dep. of Scott Luck 17:19-18:4, ECF No. 36-3.  In September 2011, the LECA or SES position did not exist in Las Cruces and there were no vacancies in the Las Cruces MSS or MSA positions.  *See id.* at 7:15-21, 35:24-36:16; Pl.'s Ex. 35, ECF No. 49-8 at 26-27 of 47. The Las Cruces Station, however, included modified duty stations in which duties included answering phones, filing, and running background checks. Pl.'s Aff., Ex. 50 at 4 of 8. Although Plaintiff was placed in a modified duty assignment in Las Cruces, it was not a permanent funded position for which there was a vacancy, and under Agency rules and practice, the Agency would only allow someone with a temporary medical condition to work at a modified duty position.  *See* Pl.'s Ex. 35, ECF No. 49-8 at 27-28 of 47.  If an employee were permanently placed in a modified duty position, the original position would then have to be filled, requiring the Agency to create a new position that did not currently exist. Pl.'s Ex. 37, ECF No. 56 at 18 of 47. Once it was determined to be a permanent disability, the Agency would reassess what permanent position the employee could do for Border Patrol.  Pl.'s Ex. 35, ECF No. 49-8 at 28-30 of 47. Because Plaintiff had a permanent disability, the Agency did not allow Plaintiff to stay in the modified duty assignment in Las Cruces until a vacant position became available. *See id.* at 27-28 of 47.

On September 21, 2011, CPA Luck informed Plaintiff by letter that the Agency was approving his request for reasonable accommodation; however, he said there were no vacant, funded positions with the Las Cruces Station for which he would qualify and that the Agency was not granting his specific request for reassignment to the Las Cruces area.  Pl.'s Ex. 11, ECF No. 49-4 at 2-3 of 15.  Instead, he offered one of two accommodations: (1) participating in the Agency's Public Transportation Incentive Program that subsidizes the use of mass transit, or (2)

participating in a private carpooling program. *Id.* CPA Luck also offered to perform an Agency-wide job search through the Customs and Border Protection's ("CBP") Minneapolis Hiring Center to determine if any funded vacancies existed within or near Las Cruces for which he might qualify. *Id.* The Agency, however, had taken no effort to identify carpooling employees prior to offering that option or otherwise to assess whether this option would have worked for Plaintiff in light of his shift and existing medical restrictions. Pl.'s Ex. 36, ECF No. 49-8 at 37-38 of 47.

CPA Luck denied the request to move the LECA position to Las Cruces because of the cost to move equipment to that station. *See* Pl.'s Ex. 35, ECF No. 49-8 at 23-24 of 47. The Las Cruces station did not have the cameras or monitoring ability that the line stations had, because it is a checkpoint station off the border. *See id.* CPA Luck believed it would be too expensive to put the type of console and equipment in a station like Las Cruces where there was not the need; however, he never attempted to get a cost estimate or speak to a computer or administrative employee to determine what it would cost to transfer the equipment or position to Las Cruces. *See id.* at 24-25 of 47; Dep. of Scott A. Luck 58:15-59:7, ECF No. 36-3.

CPA Luck acknowledged that, in other situations, the Agency had responded to EEO matters by assigning employees to alternative duties at the same station or moving the employee to another station temporarily, and then if a position is vacated, the Agency might make the assignment permanent. *See* Pl.'s Ex. 35, ECF No. 49-8 at 29-31of 47. He also testified that certain LECA duties can be done remotely, such as monitoring cameras. *See id.* 21 of 47. For example, there are a series of game cameras in Deming that can be monitored in El Paso. *See id.*

Plaintiff, however, did not accept the alternatives offered, as he would only consider reassignment to Las Cruces. Pl.'s Dep. 37:2-9, ECF No. 36-2. The carpooling option did not

5

exist at his then-current work locations, which varied, and the public transportation incentive program would require a minimum of a five-hour commute during certain times of the year, and would still require him to drive at night.   Pl.'s Ex. 37, ECF No. 56 at 5 of 47.   Public transportation from Las Cruces to El Paso only ran Monday-Friday, no weekends, no holidays, limited hours, and not during inclement weather.   *Id.*

Plaintiff, through his union representative, Lisa Calzada, inquired on September 27, 2011, as to what undue hardship the Agency would suffer in providing a reassignment to Las Cruces. Pl.'s Ex. 12, ECF No. 49-4 at 6-7 of 15.   Three days later, Plaintiff requested to work at the Paso Del Norte ("PDT") Camera Room at the El Paso Del Norte Bridge.   *See* Pl.'s Ex. 13, ECF No. 49-4 at 9 of 15; Pl.'s Dep. 38:3-7, ECF No. 36-2.   On October 5, 2011, CPA Luck denied Plaintiff's request for the PDT Camera Room assignment because it is not consistent with the 20-mile driving restriction set by his physician.   Pl.'s Ex. 14, ECF No. 49-4 at 11-12 of 15.   On October 6, 2011, Assistant CPA Javier Tavin denied Ms. Calzada's request for materials, and stated that to move Plaintiff's SES duties to Las Cruces and set up a fully operational workspace where none currently exists would "cost hundreds of thousands of dollars to accomplish" and "create substantial logistical and security concerns."   Pl.'s Ex. 15, ECF No. 49-4 at 14-15 of 15. By letter dated October 31, 2011, CPA Luck notified Plaintiff that, because he declined the public transportation incentive program and the private carpooling program, "the reasonable accommodation process has concluded and the Agency will take no further action to implement either of the aforementioned accommodations."   Pl.'s Ex. 17, ECF No. 49-5 at 4-5 of 14.

On November 14, 2011, Plaintiff made a new request for a reasonable accommodation to be assigned to a modified-duty position in the Prosecutions Office located at the Las Cruces border patrol station, a position that they put injured agents into that are on modified or light

6

duty.  *See* Pl.'s Ex. 19, ECF No. 49-5 at 10 of 14; Pl.'s Dep. 42:11-25, ECF No. 36-2; Compl. ¶ 15, ECF No. 1.  These positions in Las Cruces involved temporary, administrative duties for agents who had modified duty because of injuries, health issues, or for disciplinary reasons.  *See* Pl.'s Ex. 35, ECF No. 49-8 at 19-20 of 47.  These assignments could be short or extend months or years, depending on the circumstances.  *See id.*

By letter dated November 14, 2011, Assistant CPA Javier Tarin issued Plaintiff an options letter notifying him that given his medical condition that restricts him to driving within 20 miles of Las Cruces, and that his duty station is 45 miles from his home, he had two options available to him, from which he must choose within 10 days:  apply for immediate voluntary or disability retirement or resign from his SES position.  Pl.'s Ex. 18, ECF No. 49-5 at 7-8 of 14. By letter dated November 21, 2011, Plaintiff informed the Agency that he did not accept either of the options set forth in the options letter and that he did not agree that the carpooling options amounted to reasonable accommodations.  Pl.'s Ex. 20, ECF No. 49-5 at 12-13 of 14.

During this time, Plaintiff drove to work to El Paso against his doctor's restrictions.  *See* Pl.'s Aff., ECF No. 50 at 3 of 8.  On November 29, 2011, and again on December 12, 2011, Plaintiff, by email from his EEO representative, and verbally, requested time to meet with his EEO representative.  Pl.'s Ex. 37, ECF No. 56 at 7 of 47.  Employees are generally afforded official time to meet with an EEO representative or union representative for EEO purposes.  Pl.'s Ex. 38, ECF No. 49-8 at 45 of 47.  Nevertheless, Supervisory Border Patrol Agent Jaime Castillo denied his request to meet with his EEO representative on duty, but he allowed Plaintiff to take annual leave to meet with his representative, so long as the meeting occurred at the El Paso Border Patrol Sector.  *See* Pl.'s Ex. 37, ECF No. 56 at 8, 26 of 47.  The offered room was not fit for confidential conversation. Pl.'s Ex. 38, ECF No. 50 at 5 of 8.

On December 9, 2011, the options letter was rescinded, once the Agency realized its error in not accounting for the fact that Plaintiff's medical restriction did not limit his ability to do his job.  *See* Pl.'s Ex. 37, ECF No. 56 at 19, 24 of 47; Pl.'s Ex. 38, ECF No. 50 at 5 of 8.  On December 15, 2011, Plaintiff filed an EEO complaint. See Pl.'s Ex. 38, ECF No. 50 at 5 of 8; Government's Ex. 4A, ECF No. 36-4 at 1 of 4.

On January 19, 2012, CPA Luck denied Plaintiff's request to be assigned to the Prosecutions Office in Las Cruces, explaining that the female Border Patrol Agent who occupied that position was placed there during her pregnancy, and although she was now on maternity leave, the modified duty position is not available because it was a temporary position, the allocation of which followed her.  Pl.'s Ex. 21, ECF No. 49-6 at 2-5 of 25.  CPA Luck explained that there was no vacant position available in Las Cruces, and renewed his offers for public transportation, carpooling, or to conduct an agency-wide job search for funded positions in Las Cruces.  *Id.*  By letter dated January 25, 2012, Ms. Calzada, on Plaintiff's behalf, disputed that the Prosecutions Office position did not exist, given that the female agent vacated that position and returned to her own duty station.  *See* Pl.'s Ex. 22, ECF No. 49-6 at 7-8 of 25.  She also notified the Agency that Plaintiff accepted its offer to conduct an agency-wide search for funded vacancies within or near Las Cruces for which he would qualify.  *Id.*

On or about February 2, 2012, Lois Hofmann, Director of the Complaints Processing Center, Office of Diversity and Civil Rights, notified Ms. Calzada that it was accepting Plaintiff's complaint for processing and investigating the issues of whether the CBP discriminated against Plaintiff based on his disability and reprisal (requesting a reasonable accommodation) when his September 21, 2011 request for assignment to the Las Cruces Station was denied; his October 5, 2011 request for modified duty was denied; his November 15, 2011

options letter was issued; he was denied official time to meet with his EEO representative on November 29, 2011, and December 13, 2011; and his January 19, 2012 request for assignment to the Prosecutions Office was denied.  Def.'s Ex. 4A, ECF No. 36-4 at 1-4 of 4.

The Agency performed the job search, and on or about March 15, 2012, Sarah Hobbs, Human Resources ("HR") Specialist from the Minneapolis Hiring Center made a written offer to Plaintiff for a Mission Support Assistant ("MSA") position in Las Cruces.  *See* Pl.'s Dep. 66:10-67:25, ECF No. 36-2.  On March 22, 2012, Plaintiff's counsel sent a letter to Ms. Hobbs stating that Plaintiff was being forced to accept the position of MSA or be terminated, so Plaintiff was accepting the position but would continue to pursue his pending charges of discrimination with the EEOC.  Pl.'s Ex. 23, ECF No. 49-6 at 10 of 25. On March 28, 2012, Ms. Hobbs sent Plaintiff another letter offering the position again, but notifying him that his acceptance must be on a purely voluntary basis and not under protest. Pl.'s Ex. 31, ECF No. 49-7 at 24 of 33. On March 31, 2012, Plaintiff's counsel sent Ms. Hobbs another letter notifying her that Plaintiff was accepting the position, as he believed he would otherwise be terminated, and clarifying that he would not release his pending EEO claims. Pl.'s Ex. 24, ECF No. 49-6 at 12-13 of 25. The MSA position was a demotion to a GS-05 position with a total salary of $40,706.  *See* Pl.'s Ex. 25, ECF No. 49-6 at 15 of 25.  Although Plaintiff made $55,354 annually in his GS-9 SES position, *id.*, he accepted the offer for the new position on April 2, 2012, because he believed if he declined the offer, there would be no further consideration of reassignment as a reasonable accommodation.  Pl.'s Dep. 67:12-68:15, ECF No. 36-2.  Plaintiff signed the March 28, 2012 letter that contained the following language:

> Declination of this offer will cancel any further consideration of reassignment as a reasonable accommodation for your covered disability.

> In contrast, acceptance of this offer constitutes your agreement that CBP has met
> its current obligation to offer reasonable accommodation.

Pl.'s Ex. 31, ECF No. 49-7 at 24 of 33. On April 4, 2012, Plaintiff signed an acknowledgement that he understood and accepted the salary change that came with the MSA position, but noted that he was not waiving his EEO claims.  Pl.'s Ex. 25, ECF No. 49-6 at 15 of 25.

On April 4, 2012, Plaintiff was informed that he could no longer participate in the Employee Assistance Program ("EAP") counseling sessions. *See* Pl.'s Ex. 37, ECF No. 56 at 11 of 47.  The person he spoke with, however, was not aware of his status as an EEO complainant or that he had a disability. Pl.'s Dep. 98:22-99:12, ECF No. 36-2. Additionally, on or around April 4, 2012, Joseph Maurer, Division Chief, Operational Support, instructed Lynne Kellaway to submit "Recruit and Fill" personnel actions for positions in the El Paso Sector under the new structure, including a Mission Support Specialist ("MSS"), GS-9 position in Las Cruces.  *See* Pl.'s Ex. 37, ECF No. 56 at 34-35 of 47.

On or around April 8, 2012, Plaintiff began working in the MSA position in Las Cruces. *See* Pl.'s Dep. 69:8-15, ECF No. 36-2.  Plaintiff understood that, by accepting the MSA position, he was accepting it as a reasonable accommodation for his covered disability.  Pl.'s Dep. 69:16-20, ECF No. 36-2.

On April 17, 2012, Plaintiff learned that a Vacancy Announcement was posted for the MSS GS-9 position at the Las Cruces Border Patrol Station. Pl.'s Ex. 37, ECF No. 56 at 11, 13 of 47. Plaintiff applied for the position.  *Id.* The parties dispute whether Plaintiff was qualified for the position.  Plaintiff states that his Notice of Results shows that he was qualified for the position.  *Id.* The Agency, however, rejected his application purportedly because he did not meet the minimum education and/or experience requirements for the specialty and grade.  *See* Pl.'s Dep. 84:22-85:6, ECF No. 36-2.

On April 25, 2012, Plaintiff amended his EEOC complaint. *See* Def.'s Ex. 4B, ECF No. 36-5 at 1-3 of 3.  The Office of Diversity and Civil Rights accepted the amendment as related to the prior claim and added to its investigation of whether CBP discriminated against Plaintiff based on his disability and reprisal the following acts: when on April 4, 2012 he was informed he could no longer participate in EAP counseling; and when on April 17, 2012, he learned of the MSS position in Las Cruces that he was not offered as part of his reasonable accommodation. *See id.*

On January 11, 2013, Plaintiff filed suit "under Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1990, 42 U.S.C. § 1981, Americans with Disabilities Act, 42 U.S.C. §§12101 *et seq.* …, and the Rehabilitation Act of 1973, as amended Sections 501, *et seq.*, to correct unlawful employment practices on the basis of disability (pigmentary glaucoma) and reprisal (requesting a reasonable accommodation)…." Compl. 1, ECF No. 1. Defendant filed a motion to dismiss and for summary judgment, seeking dismissal based on exhaustion of Plaintiff's claims under Title VII, Title I, and the ADA, and summary judgment on Plaintiff's Rehabilitation Act claim. *See* Def.'s Corrected Mot. 1, ECF No. 37.

## II.   STANDARD

Summary judgment is appropriate only if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).  "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* (internal quotations omitted). Under Rule 56(c), the mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, only disputes of facts that might affect the outcome of the case will properly preclude the entry of summary judgment.  *Id.* at 248.

Initially, the moving party bears the burden of showing that no genuine issue of material fact exists.  *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).  Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial.  *Id.*  The nonmoving party must go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *See Anderson*, 477 U.S. at 248.

III.    ANALYSIS

A.    Exhaustion of Administrative Remedies

The exhaustion of administrative remedies is a jurisdictional prerequisite before filing a suit in federal court under Title VII.  *See Khader v. Aspin*, 1 F.3d 968, 970 (10th Cir. 1993). The purpose of the exhaustion requirement is to give the Equal Employment Opportunity Commission ("EEOC") the information it needs to investigate and resolve the dispute between the employee and employer. *See id.* at 971.

Defendant argues that Plaintiff's claims for unlawful employment practices in violation of Title VII, Title I, and the ADA must be dismissed for failure to exhaust his administrative remedies. Defendant contends that the EEO complaint and subsequent investigation pertained only to his disability and failure to accommodate claim under the Rehabilitation Act.[1]

---

[1] In its reply brief, Defendant argues for the first time that Plaintiff did not exhaust certain theories of liability under the Rehabilitation Act, such as intentional discrimination, disparate impact, or hostile work

As an initial matter, Plaintiff admits that he does not have a separate claim under the ADA, because "the only claims are available under federal employment disability discrimination and retaliation must arise under either Title VII or the Rehabilitation Act." Pl.'s Resp. 6 n.2, ECF No. 49.  Indeed, the Rehabilitation Act, not the ADA, constitutes the exclusive remedy for a federal employee alleging disability-based discrimination.  *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007).  Nonetheless, the standards used to determine whether the Rehabilitation Act has been violated are the same standards applied under the ADA.  *McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004) (quoting 29 U.S.C. § 794(d)). The Court will thus, to the extent it was alleged as a separate claim, dismiss Plaintiff's ADA claim.

As for Plaintiff's references to Title VII in his Complaint, the Court agrees that Plaintiff has not shown he exhausted any such claim.  Defendant's Exhibits 4A and 4B show that Plaintiff asserted claims for disability discrimination and failure to accommodate under the Rehabilitation Act during the administrative process.  Nothing in the record shows that Plaintiff's filings mention discrimination based on a characteristic protected under Title VII, and thus, his claims under Title VII will be dismissed. *Cf. Scott v. Shoe Show, Inc.*, 38 F.Supp.3d 1343, 1357-58 & n.23 (N.D. Ga. 2014) (holding that plaintiff's EEOC charge factually supported only claims of disability discrimination under ADA and could not reasonably be construed to bring charge under Title VII, and noting that Title VII does not proscribe disability discrimination, rather, it protects against discrimination based on race, color, religion, sex, or national origin).

Similarly, to the extent Plaintiff has asserted a separate Title I claim, that claim must be dismissed because Section 1981 prohibits racial discrimination, not discrimination based on a

---

environment. Def.'s Reply 2, ECF No. 54. This Court will not consider arguments raised for the first time in a reply brief, as Plaintiff did not have an opportunity to address this issue.

physical disability, as alleged here.  *See Reynolds v. School Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1532 (10th Cir. 1995) (explaining that Section 1981 prohibits racial discrimination).

### B.     Rehabilitation Act

The Rehabilitation Act ("the Act") prohibits discrimination by the federal government against an "otherwise qualified individual with a disability."  *McGeshick*, 357 F.3d at 1149 (quoting 29 U.S.C. § 794).  Section 501(b) of the Act requires federal agencies to meet the needs of disabled workers and to broaden their employment opportunities.  *Woodman v. Runyon*, 132 F.3d 1330, 1337-38 (10th Cir. 1997).  Federal employers thus have "a greater duty to ensure the employment of disabled workers than are federal grantees or private employers." *Id.* at 1338. *See also Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012) ("Part of the government's obligation is to provide reasonable accommodations to disabled employees.").

### 1.     Failure to Accommodate

Defendant concedes that "Plaintiff appears to be an individual with a qualifying disability under the Rehabilitation Act." Def.'s Corrected Mot. 12, ECF No. 37. One way for a disabled plaintiff to make a prima facie case of employment discrimination under the Act is by showing that (1) he is qualified for his job; (2) he can perform the job's essential functions with a reasonable accommodation for his disability; and (3) his employer failed to provide a reasonable accommodation despite his request.  *Hwang v. Kansas State University*, 753 F.3d 1159, 1161 (10th Cir. 2014).   To make a prima facie showing that the accommodation request was reasonable, a plaintiff need only show that the accommodation seems reasonable on its face. *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002). "Once a plaintiff can show all these things, an employer generally may avoid liability only if it can prove the accommodation in question imposes an undue hardship on its business." *Hwang*, 753 F.3d at 1161. In determining

whether an accommodation creates an undue burden on the defendant, a court should consider factors such as (1) the overall size of the defendant's program with respect to number of employees, number and type of facilities, and size of the budget; (2) the type of the defendant's operation, including the composition and structure of the workforce; and (3) the nature and cost of the accommodation needed. *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1178 (10th Cir. 1999); *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 136 (2d Cir. 1995); 45 CFR § 84.12(c); 34 C.F.R. § 104.12(c).

Reasonable accommodations can include making "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). Reasonable accommodation may include "(i) Making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (ii) Job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modifications of equipment or devices; …." 29 C.F.R. § 1630.2(o)(2)(i)-(ii). *See also* 34 C.F.R. § 104.12(b); 45 C.F.R. § 84.12(b). To determine the appropriate reasonable accommodation, the agency may need "to initiate an informal, interactive process with the individual with a disability in need of the accommodation" in order to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

Even where an employee can perform a job's essential functions, an employer may have a "duty to accommodate where accommodations are required to allow equal enjoyment of employment privileges and benefits." *Sanchez*, 695 F.3d at 1181. As the Tenth Circuit has explained:

> "[A] reasonable accommodation may include reassignment to a vacant position if the employee is qualified for the job and it does not impose an undue burden on the employer." *Taylor v. Pepsi–Cola Co.*, 196 F.3d 1106, 1110 (10th Cir.1999). "Anything more, such as requiring the reassigned employee to be the best qualified employee for the vacant job, is ... unwarranted by the statutory language or its legislative history." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1169 (10th Cir.1999) (en banc).

*Id.* at 1177.

Defendant argues that Plaintiff cannot show he was denied a plausibly reasonable accommodation, because the Agency engaged in the interactive process; the position at the grade Plaintiff sought could not be provided without undue hardship to the Agency; and Plaintiff ultimately accepted a position in Las Cruces for which he agreed constituted a reasonable accommodation for his covered disability. Plaintiff has asserted that he met his burden of identifying reasonable accommodations: reassignment to the modified duty positions in Las Cruces, transferring his position to Las Cruces, and reassignment to the MSS position that became available in April 2012.

Plaintiff first proposed as an accommodation transferring his existing position to the Las Cruces Station in order that he could drive to and from work safely, a privilege and benefit enjoyed by non-disabled employees in pursuing a normal life. The evidence and inferences construed in Plaintiff's favor indicate that the Las Cruces check point station housed numerous permanent and temporary positions.  Moreover, there is evidence his duties could be done remotely, such as monitoring cameras, and that the Las Cruces Station had phones and equipment to run background checks.  Plaintiff has thus met his burden of production of showing the existence of a plausible accommodation, the costs of which facially do not clearly exceed the benefits. *Cf. Sanchez*, 695 F.3d at 1182 ("[W]e conclude that a transfer accommodation for medical care or treatment is not per se unreasonable, even if an employee is able to perform the

essential functions of her job without it.").

Plaintiff has also produced some evidence that the proposed accommodations offered – public transportation or private carpooling could not reasonably be accomplished. As for the private carpooling option, there is evidence that Defendant had not even explored whether a private carpooling was available before proposing it, and that no one in the office participated in the program. Plaintiff also provided some evidence that the public transportation option added so many hours to his commute that it would still require him to drive in the dark, against his doctor's restrictions. The evidence, construed in Plaintiff's favor, is sufficient to make a prima facie case that Defendant's carpooling and public transportation options were not reasonable accommodations.

The burden therefore shifts to Defendant to show that the proposed accommodation would cause it to suffer an undue hardship. Although there is evidence that the costs of moving Plaintiff's position to the Las Cruces Station would be expensive, the record also shows that Defendant never assessed the financial costs of moving Plaintiff's position to Las Cruces.  The record thus does not indicate the true nature and costs of the accommodation, or how those costs would affect the Agency, in light of its overall size and numerous border facilities. Defendant has thus not met its burden on summary judgment to show that a common sense cost/benefit analysis weighs in its favor as a matter of law.  *Cf. Borkowski*, 63 F.3d at 143 ("But in the absence of evidence regarding school district budgets, the cost of providing an aide of this sort, or any like kind of information, we are unable to conclude that unreasonableness or undue hardship has been established, and we certainly cannot say that either has been established as a matter of law.").

As for reassignment to the MSS position in Las Cruces, to make a prima facie case of

17

failure to accommodate by reassignment to a vacant position, the plaintiff must show (1) that he is a disabled person; (2) the preferred option of accommodation within the plaintiff's existing job cannot be reasonably accomplished; (3) the plaintiff requested accommodation by reassignment; (4) the plaintiff was qualified to perform the vacant job; and (5) the plaintiff suffered injury. *Taylor*, 196 F.3d at 1110. The first element is undisputed. As for the second prong, Plaintiff has shown evidence that the private carpooling option was not available and that public transportation did not accommodate his disability because the hours would require him to drive at night. A question of fact thus exists as to the second element.  Regarding the third element, it is undisputed Plaintiff requested accommodation by reassignment to a position in Las Cruces.

With respect to the fourth element, there is a genuine dispute of fact as to whether the MSS position was "vacant" during the interactive process and whether Plaintiff was qualified for that job. A "vacant" position "includes not only positions that are at the moment vacant, but also includes positions that the employer reasonably anticipates will become vacant in the fairly immediate future." *Midland Brake, Inc.*, 180 F.3d at 1175.  The evidence, and the inferences derived therefrom, construed in Plaintiff's favor indicates that Defendant, at the time it was engaged in the interactive process with Plaintiff to find a reasonable accommodation may have reasonably anticipated the MSS position in Las Cruces would become vacant in the fairly immediate future, yet instead of taking steps to consider Plaintiff for that position, they only offered a position that was a demotion. Additionally, the parties dispute whether Plaintiff was qualified for the MSS position. Plaintiff, however, has presented some evidence that he was qualified for the position, and this Court must construe all inferences in Plaintiff's favor. Accordingly, whether he was qualified for the position is also a question for the jury.[2] Finally,

---

[2] Under the Rehabilitation Act, reassignment does not require giving an employee a promotion, and thus, an employee must compete for any vacant position that would constitute a promotion. *Midland Brake*, 180 F.3d at

the record shows Plaintiff suffered a loss in pay when accepting the demotion, and thus Plaintiff has met his burden of production as to the injury element.

Because there are questions of material fact whether Defendant denied Plaintiff reasonable accommodation, the Court will deny summary judgment to Defendant on Plaintiff's Rehabilitation Act claim based on a failure-to-accommodate theory.

### 2.    Disparate Impact

To establish discrimination through a disparate treatment theory, a plaintiff must show that the non-disabled, but otherwise similarly situated, employees receive more favorable treatment. *See Hwang*, 753 F.3d at 1164. Plaintiff argues that there were "hundreds of cases of injured employees being accommodated in various state of disability status by this employer by allowing them to work at any station." Pl.'s Resp. 15, ECF No. 49. Significantly, this assertion does not establish that any of the employees were similarly situated to Plaintiff. Moreover, Plaintiff's evidence does not support this general assertion. Instead, the evidence shows that the Agency had responded to EEO matters by assigning employees to alternative duties at the same station or moving the employee to another station temporarily, and then if a position were vacated, the Agency might make the assignment permanent.  *See* Pl.'s Ex. 35, ECF No. 49-8 at 30-31 of 47. This evidence merely shows that these agents received temporary duty stations for their temporary injuries or health issues. Plaintiff, however, also received a modified duty position in Las Cruces until the Agency learned his condition was permanent, not temporary. Plaintiff does not have sufficient evidence to show that the Agency created permanent positions for non-disabled similarly situated employees, while denying Plaintiff the creation of a permanent position in Las Cruces. As for the position in the Prosecutions Office, the evidence

---

1177. Based on the record before it, the Court is unable to determine whether the MSS position was an equivalent position or a promotion.

actually refutes Plaintiff's disparate impact theory. The female agent was placed on modified duty during her pregnancy in Las Cruces, but, following her maternity leave, there would be no permanent position in Las Cruces, because her permanent position would follow her to her permanent duty station. For all the foregoing reasons, Plaintiff does not have sufficient evidence of differential treatment of similarly situated employees to support a disparate impact theory of liability.

### 3.        Retaliation and Hostile Work Environment

Plaintiff makes passing reference in his response that he is alleging hostile work environment and retaliation theories of liability, *see* Pl.'s Resp. 1, 23, ECF No. 49, but fails to argue how the disputed facts meet the elements of either theory and cites no law in support of those theories. Instead, Plaintiff's arguments are restricted to failure to accommodate and disparate impact theories of liability.  Plaintiff has not articulated what actions by Defendant constituted a material, adverse action, nor has he asserted what facts would show a causal nexus between his protected conduct and the adverse action, as required to state a retaliation claim. *See Reinhardt v. Albuquerque Public Schools Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010) (explaining that, to establish prima face case of retaliation under Rehabilitation Act, plaintiff must show (1) that he engaged in protected activity; (2) that he suffered a materially adverse action by defendant either after or contemporaneous with his protected activity; and (3) a causal connection between the protected activity and the adverse action). As for a hostile work environment theory, the facts do not show a sufficiently hostile or abusive working environment based on Plaintiff's disability to sustain a claim. *See Hawkins v. Smith*, 46 F.Supp.3d 1175, 1185-86 (N.D. Okla. 2014) (explaining that, to prevail on hostile work environment claims under ADA, plaintiff must show workplace permeated with discriminatory intimidation, ridicule, and

insult that is sufficiently severe or pervasive to alter conditions of employment and create abusive working environment). The Court therefore finds, to the extent Plaintiff is asserting retaliation and hostile work environment theories, Plaintiff has not met his burden to survive summary judgment on those theories.

**IT IS THEREFORE ORDERED** that

1.      Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment (**ECF No. 36**) is **DENIED AS MOOT**.

2.      Defendant's Corrected Motion to Dismiss or in the Alternative Motion for Summary Judgment (**ECF No. 37**) is **GRANTED IN PART AND DENIED IN PART** as follows:

   a.      To the extent Plaintiff is asserting claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2 and 2000e-3(a); Title I of the Civil Rights Act of 1990, 42 U.S.C. § 1981; and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, those claims are **DISMISSED** for failure to exhaust and state a claim.

   b.      Defendant's request for summary judgment on Plaintiff's claim under the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, is **DENIED** as to the theory of failure to accommodate but **GRANTED** as to theories of disparate impact, retaliation, and hostile work environment.

_____
**UNITED STATES DISTRICT JUDGE**